Matthew H. Capron (Bar No. CA 303941)
Capron Law Offices
2220 Otay Lakes Rd Suite 502-92
Chula Vista, CA 91915
Tel: (619) 869-8181
Fax: (619) 638-8181
Email: mcapron@capronlegal.com

Attorneys for Plaintiff Luminence, LLC,

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUMINENCE, LLC,<br><br>                   Plaintiff,<br><br>          vs.<br><br>ULTRAMAILERS, INC.; CM ENTERPRISES, INC.; THEOD SIMONIAN, an individual; and HAIK ABDUNURYAN, an individual,<br><br>                   Defendants. | CASE NO:  3:19-cv-00157-JAH-MDD<br><br>MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL JUDGMENT |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR FINAL JUDGMENT

Plaintiff LUMINENCE, LLC ("LUMINENCE") moves for final judgment against defaulting Defendants ULTRAMAILERS, INC, CM ENTERPRISES, INC, THEOD SIMONIAN, and HAIK ABDUNURYAN.  Granting the requested relief will conclude this action.

///

///

///

## I.   THE FINAL JUDGMENT SOUGHT AGAINST DEFENDANTS IS APPROPRIATE UNDER THE CIRCUMSTANCES.

### A.   The Facts Of Record Show That A Final Judgment Is Warranted.

Plaintiff LUMINENCE initiated this action on January 24, 2019, seeking damages and injunctive relief from infringing website sales using its copyrighted photographs ("Copyrighted Works").  This Court has federal question subject matter jurisdiction.

Shortly after Defendants were served, the website sales using the Copyrighted Work stopped.  However, Defendants never answered the Complaint or sought relief from the Clerk's Certificate of default against them.

### B.   The Specific Relief Sought By LUMINENCE Is Factually Supported And Authorized By Law.

This Motion for Judgment is based on the allegations of the Complaint, which Defendants have admitted by failing to respond, the clerk's certificate of default in this case, and the Declaration of Matthew Capron filed in this case.

#### 1.   Defendants Pirated LUMINENCE Works For Commercial Gain.

It is well settled that, "to prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.2d 101, 108-09 (2d Cir. 2001); *Hamil America, Inc. v. GFL*, 193 F.3d 92, 98 (2d Cir. 1999).  Although the term "piracy" is overworked in copyright and trademark cases, it squarely applies here. Plaintiff LUMINENCE creates and sells fun and unique fiber optic light-up accessories including, but not limited to, its Glowbys® brand hair attachments.  It owns the copyrights in those marketing materials, including the Copyrighted Works, which are unique and somewhat famous images of a girl wearing the products in her hair which are used in the packaging.  On February 26, 2013, Plaintiff obtained a registration with the United States Copyright Office, Registration Number VA 1-897-465, for the photographic work entitled Girl Wearing Glowbys 1 (the "Copyrighted Work"). Plaintiff's Copyrighted Works are viewable and downloadable at

www.luminence.com/Photos.html.  Viewable and downloadable at www.luminence.com/CopyrightCert.html are copies of United States Copyright Registration Certificates with numbers of the Copyrighted Works.  Defendants copied and used Plaintiff's Copyrighted Works in its product packaging for a "knock-off" product for the specific purpose of selling them over the Internet, including through websites they created for that purpose.  Defendants carried out those sales in ways calculated to avoid detection and resulting liability.  After receiving each cease and desist demand from Plaintiff, Defendants changed the packaging images in its online listings and sought to evade detection by ending one online listing and beginning another, selling the same product.  By its actions Defendants acknowledged receipt of the numerous cease and desist demands.  Defendants attempted to sell their products using the infringing Copyrighted Work in their packaging on other online sales websites, presumably to avoid detection and resulting liability.  Defendants ignored cease and desist email communications from Plaintiff, but responded to emails from Plaintiff both immediately before and after the cease and desist emails.  Defendants responded to the emails from Plaintiff immediately before and after the cease and desist email because they were sent under the pretext of a product question which would have benefited Defendants if it had been a real customer.  Defendants wanted to preserve the false claim that they did not receive the cease and desist emails.  However, they cannot reasonably claim that they did not receive the cease and desist emails sandwiched between the other emails to which they responded.  Defendant willfully infringed on Plaintiff's copyrights. Defendants continue to this day to infringe on Plaintiff's Copyrighted Works in it's online listings.  In fact Plaintiff's investigator made test orders on 3/16/2109, 4/9/2019, and 4/11/2019, and received product with the infringing packaging, long after Defendants were served in this case.  Defendants have infringed on six images in all.

Based on the timeframe, observations of Defendants' listings and their prices, and Plaintiff's experience on similar matters, Plaintiff believes the amount of infringing revenue far exceeds $42,000.  Multiple Business websites estimate Defendants' annual

revenues between $2.3Million and $3.0Million.  However, upon being served in this action, Defendants failed to file an answer or respond in any way, frustrating Plaintiff's investigation and search for proof.  Faced with such obstruction, the Court can and should assume that Defendants' actual volume of infringing sales was much higher.  Thus, this case involves a large scale, lengthy, financially motivated, willful theft of intellectual property by Defendants.

### 2.      Statutory Damages Are Authorized.

The Copyright Act provides for the plaintiff to recover, at its election, either (1) its actual damages and (to the extent not redundant) defendant's profits attributable to infringement, or (2) statutory damages.  Either basis supports the amount Plaintiff seeks in this motion.  For the sake of simplicity, Plaintiff primarily couches its request in statutory damage terms as set forth further below.

The Copyright Act provides the option of actual damages/profits so that an infringer is stripped of his profits and required to make good the copyright owner's losses.  17 U.S.C. § 504(b).  Calculating actual damages in this case is difficult because Defendants have failed to answer.

There is, however, a simpler route to setting damages.  Where timely registered works are infringed, as occurred here, the Copyright Act authorizes statutory damages.  17 U.S.C. § 504(c).  Where, as here, infringement is "willful," the amount may be as high as $150,000 for each infringed work.  *Id.*  Congress increased the maximum from $100,000 to $150,000 because it found large awards to be necessary and desirable to deter the great temptation to infringement posed by modern computer technology.  H.R. Rep. No. 106-216 (1999), pp. 6-7.

Although statutory damages should at least compensate, they are not limited to actual damages.  Because such actual damages often are hard to prove, statutory damages have been authorized to make such proof unnecessary.  *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991); *Gnossos Music v. Mitken, Inc.*, 653 F.2d 117, 118 (4th Cir. 1981).  But beyond that, the critical purpose of deterring

similar misconduct permits a maximum per work award for willful infringement, even where the infringement caused little or no damage. *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496-97 (4th Cir. 1996) (collecting authority and sustaining maximum awards despite no proof of actual damages); *F.W. Woolworth Co v. Contemporary Arts, Inc.*, 344 U.S. 228, 234 (1952) (for willful infringement a maximum award is permissible "even for uninjurious and unprofitable invasions").

### 3.   <u>$30,000 In Statutory Damages Should Be Awarded Here.</u>

The infringements here were willful and, indeed, malicious as well. *Yurman*, 262 F.3d at 112 ("willfulness in this context means that the defendant 'recklessly disregarded' the possibility that 'its conduct represented infringement.'"). Defendants knew their conduct was unlawful, and they acted without the slightest pretense of a justification. Defendants employed various steps to conceal their identity and their sales after receiving a cease and desist. Defendants knew of and intended to injure Plaintiff's rights for their own profit. Their objective was to steal, plain and simple. This was not a momentary lapse, but a sustained commercial enterprise that continues to this date, despite this lawsuit. It is, among other things, a serious felony. 18 U.S.C. § 2319 (authorizing a ten-year term of imprisonment for profit-motivated willful infringement in addition to all civil consequences). As Plaintiff's difficulties in bringing Defendants to judgment demonstrate, the internet creates a great incentive to such infringement, as well as a shield against liability. To deter others from yielding to the same temptation, a large award is appropriate. *Yurman*, 262 F.3d at 113-14 ("statutory damages are not meant to be merely compensatory or restitutionary. . . The statutory award is also meant 'to discourage wrongful conduct.'"). Defendants willfully infringed on six (6) of Plaintiff's Copyrighted Works as outlined in the complaint, via multiple streams of revenue. Thus, at the maximum of $150,000 per work, statutory damages of $900,000 are the maximum allowed in this case. Plaintiff proposes and requests that the Court award $7,000 per willfully infringed image or $42,000. This is a small fraction of the maximum. On the

facts of this case, Plaintiff believes such an award will adequately deter as well as compensate.

Further evidence that $42,000 is a reasonable amount is the fact that similary Defendants with similar fact patterns have settled for close to $42,000. To be sure they settled for those amounts, knowing full well that a final judgment may be much more.

### 4.   PLAINTIFF Is Entitled To Injunctive Relief And Attorneys Fees.

Plaintiff does seek an injunction against future similar misconduct by Defendants. 17 U.S.C. § 502(a) makes express that the Court may issue "final injunctions on such terms as it may deem just to prevent or restrain infringement of a copyright." Thus, such relief is authorized and is justified here by Defendants' prior conduct.

Finally, Plaintiff also requests attorney's fees and expenses in the sum of $4,865.00, as outlined in the declaration of Matthew Capron, filed herewith.

## II.   CONCLUSION

For the reasons demonstrated above, and based on the supporting evidence, Plaintiff LUMINENCE requests that a default judgment be entered against Defendants ULTRAMAILERS, INC, CM ENTERPRISES, INC, THEOD SIMONIAN, and HAIK ABDUNURYAN, and that Final Judgment be entered on that basis, in the amount of $42,000 statutory damages plus $4,865 attorneys fees & costs. If this motion is not opposed, Plaintiff requests entry of the proposed Final Judgment on the basis of the papers, including this motion and memorandum. If, however, there is an opposition, Plaintiff requests such a hearing as the Court deems appropriate, and reserves the right to offer additional evidence at that time.

Dated: May 13, 2019

Respectfully submitted,
CAPRON LAW OFFICES


By: s/Matthew Capron
MATTHEW CAPRON

Attorneys for Luminence, LLC
email: mcapron@capronlegal.com

## CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is CAPRON LAW OFFICES, 2220 Otay Lakes Rd Suite 502-92, Chula Vista, California 91915.  On **May 13, 2019**, I served the foregoing document.

☑   **USPS MAIL TO:**       **Ultramailers, Inc**
**17647 Prairie St**
**Northridge, CA 91325**

**CM Enterprises, Inc**
**17647 Prairie St**
**Northridge, CA 91325**

**Theod Simonian**
**17647 Prairie St**
**Northridge, CA 91325**

**Haik Abdunuryan**
**17647 Prairie St**
**Northridge, CA 91325**

*(Federal)*   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 13, 2019, at **Chula Vista**, California.

s/Matthew H. Capron
Matthew H. Capron